297 S.E.2d 898

**TEAVEE OIL & GAS, INC.**

v.

**David C. HARDESTY, Jr., Tax Commissioner, etc.**

**No. 15609.**

Supreme Court of Appeals of West Virginia.

Nov. 19, 1982.

Gary G. Markham, Thomas B. Bennett, Bowles, McDavid, Graff & Love, Charleston, for appellant.

Wayne Basconi, Asst. Atty. Gen., Charleston, for appellee.

NEELY, Justice:

In 1978 the State Tax Department audited the appellant, Teavee Oil & Gas Company, Inc., and assessed additional business and occupation tax in the amount of $50,237.86 against it for the period 1 January 1973 to 31 December 1977. The State Tax Commissioner disallowed the taxpayer's method for valuing its production of natural gas at the well mouth. On appeal to the Circuit Court of Kanawha County the tax commissioner's decision was affirmed *in toto.*

The appellant is a West Virginia corporation that operates and maintains an integrated gas production and distribution business consisting of the production of natural gas from its own wells, the purchase of natural gas from other wells, and the transmission of its own and purchased gas through its own pipeline system to industrial customers. It is the value of the gas produced at appellant's own wells that is at issue in this appeal, and in that regard appellant maintains meters to measure the number of thousand cubic feet of gas produced at each well mouth.

During the audit period the taxpayer paid business and occupation tax at the rate of $8.63 for every one hundred dollars of value pursuant to *W.Va. Code,* 11–13–2a [1982]. The appellant computed its tax based upon § 1.2a(F)(2) of the Business and Occupation Tax Rules and Regulations (BOT Regs.), which provides in relevant part:

> [t]he severance and production of natural gas shall be valued for purposes of business and occupation tax at the well mouth of such severance and production . . .

This regulation establishes three alternative methods to calculate the well mouth value. The appellant chose valuation method (b), and determined well mouth value on the basis of *average purchase price* at the well mouth. Method (b) specifies:

> As an alternative to the method presented at paragraph (a), *supra,* the well mouth value of such severance and production may be determined by the *average purchase price* of natural gas from the same pool or field, or, in the event no gas is purchased from the same pool or field, by the average purchase price of natural gas from the most proximate pool or field and of the same quality and characteristics as that severed and produced, provided that in either case such purchase price accurately represents the well mouth value of the gas severed and produced . . .

BOT Regs. § 1.2a(F)(2)(b). [Emphasis supplied].

As a result of the audit, the tax commissioner disallowed the appellants' valuation and revalued the produced gas by reference to the average price at which petitioner sold its gas in the marketplace, deducting from that price 15% for transmission expenses, as provided in alternate valuation method (c) of BOT Regs. § 1.2a(F)(2) which specifies:

> "As an alternative to the methods presented at paragraph (a) and at paragraph (b), *supra,* the well mouth value of such severance and production may be determined by a deduction of transportation and transmission costs in the amount of 15% of the gross proceeds of the natural gas severed and produced. This deduction shall be supported by a statement of the gross proceeds of sale of the natural gas severed and produced, and a computation of the deduction therefrom, and shall be subject to review and audit, and possible assessment or refund as a result of audit, by the department." BOT Regs. § 1.2a(F)(2)(c).

The appellant asserts that in the hearing before the tax commissioner it proved that its well mouth value by reference to the average purchase price in gas purchase

contracts with independent well owners was substantially lower than the value alleged by the Tax Department using Method (c) to compute value. The gas produced by appellant was either of the same pool or field as that produced by the independent wells, or was from the most proximate pool or field of the same quality as that produced by the independents.

Teavee maintains in this Court that the well mouth value of its produced natural gas should be based on the average price paid by it for gas purchased from unaffiliated well owners located in the same area, since the tax commissioner has authorized this method of valuation. To show the average cost of such purchased gas, the appellant presented into evidence ten different contracts with independent well owners by which it purchases gas. Such contracts, for the most part, were entered into in the 1950's and 1960's and the prices ranged from fifteen cents per thousand cubic feet to twenty-eight and a half cents per thousand cubic feet. Teavee contends that BOT Regs. § 1.2a(F)(2)(b), or "Method (b)," allowing it to value its production activities according to the purchase price of gas from wells in the same or a proximate gas field, permits it to value its gas based on these contract prices.

Teavee properly reported its gross proceeds from the sale of purchased gas under the wholesale sales classification of the business and occupation tax. These are not in dispute on this appeal. The tax commissioner classified gross proceeds from the sale of produced gas under the production classification. However, such gross proceeds were first reduced to the well mouth value by deducting the amount of the cost of transmitting the natural gas from the well head to the point of sale. The deduction for transmission expenses was computed on the basis of evidence presented by the appellant at the administrative hearing. All actual costs of transporting the gas from the well mouth to the point of sale, other than general administrative or overhead expenses, were allowed. The amount of gross income allowed as transmission costs was held taxable under the service classification set forth in *W. Va. Code*, 11–13–2h [1971]. This conforms with BOT Regs. 1.2a(F)(2).

■ This case is largely a tempest in a teapot. It is true that the tax commissioner has promulgated rules and regulations that set forth reasonable methods for computing well mouth value of produced natural gas. Those rules and regulations implement *W. Va. Code*, 11–13–2a [1982]. That section provides that annual privilege taxes shall be collected;

Upon every person exercising the privilege of engaging or continuing within this state in the business of severing, extracting, reducing to possession and producing for sale, profit or commercial use any natural resource products, the amount of such tax to be equal to the value of the articles produced as shown by the gross proceeds derived from the sale thereof by the producer,

and provides that the rate of taxation shall be, in the case of "[n]atural gas, in excess of the value of $5,000, 8 and 63 one hundredths percent." *Id.*

Obviously it was the intention of the Legislature to tax true and actual value, and the tax commissioner's regulations are designed to establish reasonably convenient and accurate approximations of actual value.

■ The appellant abused the tax commissioner's rules and regulations by applying a measurement that was not intended by Method (b). Obviously, when the tax commissioner permitted evaluation based upon "the average purchase price of natural gas from the same pool or field, or, in the event no gas is purchased from the same pool or field, by the average purchase price of natural gas from the most proximate pool or field and of the same quality and characteristics as that severed and produced," it was the intention of the regulation that *current* market prices negotiated by independent parties in arm's length transactions be used as the standard.

The contracts that the appellant used as the price standard for gas from the same pool were entered into twenty years ago.

Those contracts vastly understate current fair market value, and by using them the appellant did not comply with an essential condition of Method (b) that limits the application of the method to circumstances where "such purchase price accurately represents the well mouth value of the gas severed and produced..."

Consequently, for the reasons set forth above, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

HARSHBARGER, J., deeming himself disqualified did not participate in the consideration or decision of this case.